# McFerran *versus* Filbert.

Two physicians, one of them having an established and lucrative city practice, the other a stranger, entered into a copartnership agreement for the joint practice of medicine for the term of five years, the latter paying to the former $1,000 in cash and a note for $500, for a moiety of said established practice. The articles contained the usual partnership stipulations, and further this proviso : "Provided, nevertheless, that the said L. S. Filbert [the established practitioner] shall be at liberty during the said term to carry on and attend to any business other than that of practicing medicine and surgery, and may at any time absent himself from attendance in said profession as he may and shall see fit and proper." After two years Filbert engaged in other business and left the city permanently, without his partner's consent. He subsequently brought suit on the note for $500, to which the defendant set up as a defense breach of the agreement and failure of consideration. The court charged, in effect, that under the terms of this proviso, he had a right to do as he did. Held, not to be error.

January 9, 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term 1882, No. 417.

Assumpsit, by L. S. Filbert against J. A. McFerran, upon a promissory note given by defendant to plaintiff, for $500, dated June 22d 1870, payable six months after date. Indorsed : "Received, December 14th 1876, on the within note, one dol-

[McFerran *v.* Filbert.]

lar.—J. A. McFERRAN." Plea, non-assumpsit, non-assumpsit infra sex annos, set off, and payment, with leave, &c.

On the trial, before THAYER, P. J., the following facts appeared :—The plaintiff and defendant were physicians, the former having, in 1869–70, an established practice in the city of Philadelphia worth $5,000 a year. About the end of 1869, the defendant, who resided in the State of Delaware, came to Philadelphia and advertised for a partner ; Dr. Filbert answered the advertisement, and after some negotiations they entered into the following copartnership agreement, dated June 22nd 1870 :—

Articles of agreement made, &c., between, &c. " Whereas the said Filbert is now established in the practice of medicine and surgery in said city, and whereas the said Joseph A. McFerran is desirous of entering into copartnership with the said L. S. Filbert in the art and profession of practicing medicine and surgery aforesaid.

" Now this agreement witnesseth, That the said L. S. Filbert and the said Joseph A. McFerran do hereby associate themselves in the art and occupation aforesaid for and during the full end and term of five years, unless the said copartnership shall, before the end of the said term, be mutually dissolved by the consent of both the parties. The said Joseph A. McFerran shall and will pay to the said L. S. Filbert the sum of $1,500, lawful money of the United States, for one equal moiety of the said established practice of the said L. S. Filbert. And it is hereby further agreed between the said parties, each for himself respectively as follows, that is to say : That they shall and will not at any time during the said term exercise or follow the said occupation, art, and profession, to their private benefit and advantage, but shall and will from time to time, and at all times during the said term, do their best endeavors to the utmost of their skill and ability for their mutual advantage.

" And also that they shall and will during the said term discharge equally between them all expenses strictly belonging to the management of the said art or profession aforesaid, and that all such profit, gain, and increase as shall arise by reason of the said joint business and profession shall be equally and proportionately divided between them, share and share alike. And all losses that shall happen in the said joint business by bad debts or otherwise shall be paid and borne equally between them. And further, it is agreed that there shall be kept during the said term perfect, just, and true books of account, wherein each of the said copartners shall enter and set down as well all the moneys by him received and expended in and about the said joint business, and also an account of all services rendered in the exercise and performance of their duties in the said pro-

[McFerran *v.* Filbert.]

fession and business, and all other matters and things in any way belonging or appertaining thereto, so that either of them may at any and all times have free access thereto. And also that the said copartners, once in twelve months, or oftener if need shall require, upon the request of one of them, shall make and render each to the other, or to the executors and administrators of each other, a true and perfect account of all profits and increase by them made, and of all losses sustained, and all other things whatsoever by them made, received, and disbursed, acted, done, and suffered in the said copartnership, and the account so made shall and will clear, adjust, pay, and deliver, each unto the other at the time of making such account, their equal share of the profit so made, as aforesaid.

"And at the end of the said term of five years or other sooner determination of these presents (be it by the death of the said parties or otherwise), they the said copartners, each to the other, or in case of the death of either of them, the surviving party or the executors or administrators of the party deceased, shall and will make a full and final account of all things as aforesaid, and in all things well and truly adjust the same, and also that upon making such account all and every note or notes, or other evidences of debt which shall appear to be remaining in favor of the said copartnership, shall be equally parted and divided between them the said copartners, their executors and administrators, share and share alike, *provided, nevertheless, that the said L. S. Filbert shall be at liberty during said term to carry on and attend to any business other than that of practicing medicine and surgery, and may at any time absent himself from attendance in said profession as he may and shall see fit and proper.*

"In witness whereof the said parties have hereunto set their hands and seals the day and year aforesaid.

(Three witnesses.)                      L. S. FILBERT.
                                        J. A. McFERRAN."

"Received June 22d 1870, of Joseph A. McFerran, one thousand dollars cash, and his note for five hundred, payable in six months, being payment in full according to the above agreement.                               "L. S. FILBERT."

The note in suit was given in pursuance of the above agreement.

The parties practiced medicine as partners in accordance with the agreement for two years, when, in June 1872, Dr. Filbert notified Dr. McFerran that on the 1st of July he should give up the practice of medicine, that he had received a large contract for paving streets in the city of Washington, and was obliged to quit, but would make it all right. After this Dr. McFerran practiced alone.

On December 14th 1876, Dr. Filbert called on Dr. McFerran and said he had found the $500 note in an old pocket-book, that it had nearly run out. McFerran replied that he owed Filbert no money, that he had quit the partnership. Filbert replied that he did not want anything on the note, but wanted an endorsement on it " for the purpose of getting a settlement of the book account." McFerran then wrote the endorsement, as above.

No points for charge were submitted. The court charged, inter alia :

" I observe in the agreement no ambiguity or any doubt about the intentions of the parties. . . . It appears that Dr. Filbert desired to leave his medical practice. That was understood at the time. It was the motive on his part for making the arrangement, and it accounts for the proviso in the agreement which enabled Dr. Filbert to carry out his original design of going into some other business. [By the very terms of the agreement he was at liberty to go into any other business, and could give as little time to the practice of medicine as he pleased. . . . It is perfectly plain, that under this agreement, if Dr. Filbert chose to embark in any other business on his own account, he was altogether at liberty to do so without incurring any responsibility to the defendant. It is no answer to the plaintiff's demand for the defendant to say to the plaintiff that he gave up the practice of medicine. That is what he intended to do.] Something was said by Dr. McFerran to the effect that Dr. Filbert abandoned the practice of medicine. [He had a right to abandon the practice of medicine. It is one thing to abandon the partnership agreement, which he could not do, and quite another thing to abandon active practice, which he had thought to do. For doing that, he could not be held responsible by the agreement. He was free by the terms of that agreement to embark in any business he chose.] "

Verdict for the plaintiff, for $830.71, and judgment thereon. The defendant took this writ of error, assigning for error the portions of the charge above quoted within brackets.

*Joseph L. Tull,* for the plaintiff in error.—The clause of the agreement under which the learned judge virtually directed a verdict for the plaintiff, must be construed with reference to the main intent of the parties, as set forth in the entire agreement. They " associated themselves as partners in the art and occupation of the practice of medicine and surgery, for and during the full end and term of five years, unless the copartnership should be sooner mutually dissolved by the consent of both parties." They shall " at all times during the said term do their best endeavors to the utmost of their skill and ability

[McFerran *v.* Filbert.]

for their mutual advantage." The cash and note of Dr. Mc-Ferran were expressed to be the consideration for one equal moiety of the said established practice of the said L. S. Filbert. Now the proviso permitting Dr. Filbert to carry on other business, and to absent himself at any time from attendance in said profession as he may and shall see fit and proper, is capable of two constructions; one consistent with and the other repugnant to the main intent of the agreement. By the former, he was permitted to carry on other business at the same time he practiced medicine with his partner, and to absent himself from attendance temporarily as he might see fit. By the latter he could, two weeks or two years after taking Dr. McFerran's money, desert him, a stranger in a strange city, thereby preventing him from securing the practice, the consideration for his money. In such case, that construction by which the whole agreement may be harmonized, should be adopted, but the court below adopted the other construction. If that be the right and only construction of which the proviso is capable, then the proviso, being repugnant to the grant, is void. Association is a necessary incident to the agreement, in order that the " good will " may continue, and the plaintiff by his breach of contract, having willfully failed to assure to the defendant that which he agreed to sell and the defendant purchased and paid for, the latter is entitled to set up failure of consideration as an equitable defence to the note in suit under the plea of non-assumpsit. The authorities in similar cases of partnership agreements fortify our position : Featherstonhaugh *v.* Turner, 23 Beav. 382; Freeland *v.* Stansfeld, 2 Sm. & Gif. 479.

*W. Henry Smith*, for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, March 5th 1883.

The single assignment in this case alleges error in the charge of the court. There is but slight room for criticism in the portion selected, still less when read in connection with the remainder of the charge. When the learned judge instructed the jury that under the agreement between the parties the plaintiff below " was at liberty to go into any other business, and could give as little time to the practice of medicine as he pleased," he but repeated what was substantially set forth in said agreement. This is too plain for argument. But it was alleged there was error in that portion of the charge wherein the court said : " It is no answer to the plaintiff's demand, for the defendant to say to the plaintiff that he gave up the practice of medicine—that is what he intended to do. He had a right to abandon the practice of medicine. It is one thing to

[Otterson *v.* Middleton.]

abandon the partnership agreement, which he could not do, and quite another thing to abandon the active practice, which he had a right to do. For doing that, he could not be held responsible by the agreement. He was free to embark in any other business he chose."

The learned judge, in his charge, further instructed the jury that if the plaintiff practiced medicine on his own account after he gave up active practice under the agreement, it would be a defence to the note, and the plaintiff could not recover.

We see no error in this. If the defendant desired more specific instruction, he should have asked for it. The distinction between abandoning the partnership agreement, and engaging in active practice under it, was clearly stated by the learned judge below. The question of the abandonment of the partnership agreement was in effect left to the jury. The defendant, having submitted no point, nor asked for any instruction, cannot now convict the court below of error for omitting to charge more fully upon this branch of the case. This rule is too familiar to need the citation of authority.

Judgment affirmed.